## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

LANY R. SHEPHERD,                    )
                                     )
             **Plaintiff,**           )
                                     )
v.                                   )          **CIVIL ACTION NO. 5:09-00287**
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
             **Defendant.**           )

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 40 - 433, 1381-1383f. This case is presently pending before the Court on the Plaintiff's Motion for Summary Judgment (Document No. 13.) and the Defendant's Motion for Judgment on the Pleadings (Document No. 15.), Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 3 and 4.)

The Plaintiff, Lany R. Shepherd (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on June 9, 2005 (protective filing date), alleging disability as of July 21, 2004, due to bad nerves, panic attacks, a back injury, carpal tunnel in both hands, lead and metal poisoning, and secondary skin infection on left foot. (Tr. at 14, 253, 261, 733-39.) The claims were denied initially and upon reconsideration. (Tr. at 740--43, 746-49.) On June 14, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 59.) The first hearing was held on January 11, 2007, before the Honorable Karen B. Peters. (Tr. at 62-78.) Two subsequent hearings

were held before the ALJ on September 26, 2007, and May 15, 2008. (Tr. at 79-141, 142-91.) By decision dated December 2, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-26.) The ALJ's decision became the final decision of the Commissioner on February 6, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 7-10.) On March 23, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (C) *Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

4

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, July 21, 2004. (Tr. at 17, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from back pain, mild bilateral carpal tunnel syndrome, gastroesophageal reflux disease (GERD), anxiety/post traumatic stress syndrome (PTSD), depression, and borderline intellectual functioning, which were severe impairments. (Tr. at 17, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for work at the light level of exertion, with the following limitations:

> [T]he claimant requires the option to alternate sitting and standing once each hour

5

for brief stretch breaks in place, cannot climb ropes, ladders, or scaffolds, but can perform other posturals occasionally, has a mild limitation in the use of his hands for repetitive fine manipulation, up to 1/3 of an 8 hour work day, cannot work continuously for more than 20 minutes at a time, cannot work with the public, cannot work closely and cooperatively with co-workers, and is limited to simple, non-complex tasks.

(Tr. at 22, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 24, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a marker/order filler, at the light level of exertion, and as a surveillance monitor, at the sedentary and light levels of exertion. (Tr. at 25, Finding No. 10.) On this basis, benefits were denied. (Tr. at 26, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

6

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on September 13, 1969, and was 37 years old at the time of the administrative hearing, April 11, 2006. (Tr. at 733.) Claimant had a high school education and was able to communicate in English. (Tr. at 259.) In the past, he worked as a cashier, ammunition assembler, night stocker, construction laborer, fire brick layer (mining laborer), short order cook, and lumberyard stacker. (Tr. at 185, 254.)

 The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it in relation to Claimant's mental impairments as his allegations focus only on mental impairments.

On September 20, 2005, Claimant underwent a consultative psychological evaluation by Kevin W. Adams, M.A. (Tr. at 20, 486-91.) Claimant reported being nervous and anxious, that he had recurring crying spells, that he was irritable and easily upset, and that he liked to be left alone. (Tr. at 20, 487.) He indicated that he had lost interest in pleasurable activities, had a short temper, and experienced sleep disturbance. (Id.) Claimant denied any history of inpatient psychiatric treatment. (Id.) On mental status examination, Claimant was motivated and oriented, his speech was slow paced and concise, his mood was depressed, and his affect was flat. (Tr. at 20, 488.) Mr. Adams noted that Claimant's stream of thought was within normal limits, as were his insight and immediate and remote memory. (Id.) Claimant's thought content however, was mildly delusional as he felt that people in the general public watched him and were against him. (Id.) His psychomotor

behavior was mildly retarded, his judgment was moderately deficient, and his recent memory was markedly deficient. (Id.) Claimant reported fleeting thoughts of suicide but denied previous attempts or plans. (Id.) Mr. Adams further noted that Claimant's concentration, persistence, and pace were mildly deficient. (Tr. at 20, 488-89.) Claimant reported his activities to include caring for his child; helping with the dishes, cutting grass, and cleaning house; performing self care; cooking simple meals; driving a motor vehicle; and watching television. (Tr. at 20, 489.) Mr. Adams diagnosed depressive disorder NOS and anxiety disorder NOS. (Id.)

Timothy Saar, Ph.D., completed a form Psychiatric Review Technique on November 1, 2005, on which he opined that Claimant's depressive and anxiety disorders were non-severe impairments, resulting in mild limitations of activities of daily living and maintaining social functioning, concentration, persistence, or pace. (Tr. at 20, 504-17.) Dr. Saar opined that Claimant's mental impairments resulted in no episodes of decompensation. (Tr. at 20, 514.)

On April 6, 2002, Claimant underwent another consultative evaluation by Sunny S. Bell, M.A. (Tr. at 20, 561-66.) Claimant reported that he was depressed and experienced crying episodes, decreased energy, sleep difficulties, sleep disturbances, irritability, decreased libido, hopeless and helpless feelings, worthless and useless feelings, difficulty with concentration, memory problems, and of being withdrawn and apathetic. (Tr. at 20, 562.) He admitted to vague suicidal thoughts and stated that he heard voices telling him that he would lose his child and end up in a homeless shelter. (Id.) Claimant also reported that he was anxious and experienced panic attacks. (Id.) On mental status examination, Ms. Bell noted that Claimant was cooperative and motivated, interacted in a socially appropriate manner, spontaneously generated conversation, exhibited a sense of humor, maintained good eye contact, appeared comfortable, and easily established rapport. (Tr. at 20, 561,

563.) Claimant's thought processes were logical and organized, and he reported no delusions, obsessions, or phobias. (Tr. at 20, 563.) His judgment was normal, as was his immediate and remote memory, concentration, and psychomotor behavior. (Tr. at 20, 563-64.) Ms. Bell noted that Claimant's recent memory skills were moderately deficient. (Tr. at 20, 564.)

Ms. Bell diagnosed depressive disorder NOS and panic disorder without agoraphobia. (Tr. at 20, 564.) She noted Claimant's activities of daily living included performing self-care, accompanying his wife shopping, doing yard work with the weedeater, driving, running errands, walking and sitting outside, driving to the post office, and helping out with housework, cooking, doing dishes, and laundry. (Id.) Ms. Bell further noted that Claimant's social functioning, pace, and persistence were within normal limits. (Tr. at 20, 565.)

On May 9, 2006, Dr. Tasneem Doctor, Ed.S., Ed.D., completed a form Psychiatric Review Technique, on which he opined that Claimant's depressive disorder and anxiety disorder NOS versus panic disorder without agoraphobia were non-severe impairments, resulting in mild limitations of activities of daily living and maintaining social functioning, concentration, persistence, or pace. (Tr. at 21, 569-82.)

On July 3, 2006, Dr. S. A. Muscari, D.O., completed a form General Physical (Adults) for the West Virginia Department of Health and Human Resources. (Tr. at 19, 624-26.) Dr. Muscari opined that Claimant could perform work at the sedentary exertional level, but that he needed to avoid high stress situations. (Tr. at 19, 625.) He also reported that Claimant's psychiatric condition was mildly depressed, but normal. (Tr. at 19, 624.) On October 2, 2006, Dr. Muscari completed a further form on which he opined that Claimant was precluded from working for a period of 60 days due to a low back strain. (Tr. at 19, 626.)

Claimant underwent a further psychological evaluation on September 20, 2007, for the West Virginia Department of Health and Human Resources, which was conducted by Mari Sullivan Walker, M.A. (Tr. at 21, 670-79.) Claimant reported having experienced panic attacks, nervousness, excessive worry, depression, irritability, crying spells, anxiety related to noises and crowds, difficulty concentrating and making decisions, a loss of interest in pleasurable activities, forgetfulness, and sleep disturbances. (Tr. at 21, 672.) Claimant indicated that he watched television, cooked, drove a vehicle, cared for his child, and drove his girlfriend to work. (Tr. at 21, 674.) On mental status examination, Ms. Walker noted that Claimant was oriented, his mood was dysphoric and his affect was restricted, that he felt people were against him and watched him, and that he experienced hallucinations. (Id.) She noted that his insight and judgment were severely deficient, that his immediate and recent memory was intact, that he denied suicidal and homicidal ideation, and that his remote memory was impaired. (Id.) She further noted that his concentration was severely deficient and that his pace was slow. (Tr. at 21, 675.)

Intelligence testing revealed a verbal IQ of 64, a performance IQ of 69, and a full scale IQ of 63, which placed Claimant within the extremely low classification of intellectual functioning. (Tr. at 21, 675.) Ms. Walker diagnosed Claimant with a panic disorder without agoraphobia, a mood disorder due to chronic pain with depressive features, mild mental retardation, and a GAF score of 51.[2] (Tr. at 21, 676.) She opined that "[b]ased on [Claimant's] current level of intellectual functioning, his level of academic achievement, the severity of his psychological symptoms . . . he

_____

[2] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

is incapable of sustaining steady gainful employment of even light or sedentary type." (Tr. at 21, 677.)

Claimant underwent counseling from September 20, 2007, through March 13, 2008, with Ms. Walker and her associates. (Tr. at 21, 684-99.) Progress notes indicate that Claimant reported difficulties with his girlfriend due to her drug use. (Id.)

On May 21, 2008, Claimant reported to Dr. Omar K. Hasan, M.D., that he was doing better and that his mood was better. (Tr. at 21, 730.) Dr. Hasan diagnosed panic disorder and major depressive disorder. (Id.) He adjusted Claimant's medications, but noted that they were helping him. (Id.)

At the administrative hearing, Gary Bennett, M.D., testified as a medical expert that Claimant did not meet any of the mental listings of impairments. (Tr. at 21, 176-77.) Specifically, he testified that the evidence of record did not support a finding of mental retardation, and that, at best, he had "probably borderline intellectual functioning." (Id.) Thus, Dr. Bennett opined that due to his borderline intellectual functioning, combined with his panic attacks, he should be limited from working with the general public. (Tr. at 21, 177.)

After the administrative hearing, Dr. Bennett submitted an interrogatory on Claimant's mental impairments, on which he again opined that Claimant did not meet a listing mental impairment. (Tr. at 21, 731-32.) He considered Claimant's primary diagnosis as panic disorder with symptoms of a generalized anxiety disorder. (Tr. at 21, 731.) Dr. Bennett opined that Claimant did not have a medically determinable impairment based on his anxiety. (Id.) Dr. Bennett noted that Claimant graduated high school from a regular school curriculum and earned grades ranging from "A's" to "D's," and failed most of his third grade classes, but nevertheless was promoted. (Id.) He

opined that the primary limitations supported by the record involved Claimant's social functioning. (Tr. at 21, 732.) He opined that Claimant was "not likely to function well in settings where he must interact with the general public or large groups of people due to his anxiety." (Id.) He further opined that Claimant's anxiety interfered with his ability to perform complex or detailed job instructions, and therefore, should be limited to simple one or two-step instructions. (Id.)

Dr. Bennett disagreed with Ms. Walker's diagnosis of mild mental retardation, which was based on his IQ scores. (Id.) Dr. Bennett found that Ms. Walker's diagnosis was inconsistent with the evidence of record and noted that the evidence demonstrated no mention of concerns about intellectual functioning in any of Claimant's paperwork or in the records of any treatment providers' notes or in other evaluations. (Id.) He noted that Ms. Walker found that Claimant read at the seventh grade level, which was lower than would be expected for someone with a high school education, but was higher than would be expected form someone deemed mentally retarded. (Id.)

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the ALJ erred in discrediting the opinions of Dr. Muscari and Mari Sullivan Walker, his treating medical providers, and adopted the opinion of Dr. Bennett, the medical expert who never examined Claimant. (Document No. 14 at 8.) Claimant asserts that the ALJ's "failure to fully explain what part of the record, if any supports, her decision to discredit the reports of Dr. Muscari and Mari Sullivan Walker means that her decision cannot be considered as being supported by substantial evidence." (Id.)

In response, the Commissioner asserts that Claimant's allegation should be rejected for three reasons. (Document No. 15 at 9-13.) First, the Commissioner asserts that Claimant fails to recognize that the ALJ had the responsibility of determining whether Claimant was disabled, and not Dr.

Muscari or Mari Sullivan Walker. (Id. at 9.) Second, the Commissioner asserts that even if the ALJ

had credited Dr. Muscari's opinions, they did not support Claimant's claim of disability. (Id. at 10.)

The Commissioner notes that Dr. Muscari's July 3, 2006, opinion indicated that Claimant could

perform sedentary work, which was consistent with the VE's testimony. (Id.) Regarding Dr.

Muscari's October 2, 2006, opinion, the Commissioner notes that it precluded Claimant from

working for only a 60 day period of time. (Id. at 10-11.) Thus, any error that the ALJ may have

committed in rejecting Dr. Muscari's opinions is harmless because remand would not lead to a

different result. (Id. at 11.) Third, the Commissioner asserts that the record is replete with evidence

contradicting Mari Sullivan Walker's opinion. (Id. at 11-13.) The Commissioner notes that Ms.

Walker's opinion was submitted to the West Virginia Department of Health and Human Services,

and therefore, had minimal value. (Id. at 12.) Finally, the Commissioner notes that Ms. Walker failed

to indicate in her opinion whether Claimant's impairments would last for a continuous period of not

less than twelve months. (Id. at 12-13.)

Claimant next alleges that the ALJ erred in assessing Claimant's credibility "regarding the

extent of the impairments on his ability to function." (Document No. 14 at 8-9.) Claimant asserts that

the ALJ's reasoning in not finding Claimant completely credible was based on "isolated findings

from various physicians taken out of context or the unsupported speculation of Dr. Bennett that

[Claimant] suffered only mild restrictions in the activities of daily living and moderate restrictions

in social functioning, concentration, persistence or pace." (Id. at 8.)

The Commissioner advances three reasons why the ALJ's credibility assessment is not in

error. (Document No. 15 at 13-14.) First, the Commissioner asserts that the credibility assessments

of an ALJ "are virtually unreviewable on appeal." (Id. at 13.) Second, the Commissioner asserts that

Claimant incorrectly believes that objective evidence of his subjective complaints is not required. (Id. at 13-14.) Third, the Commissioner asserts that despite Claimant's arguments that the ALJ based his findings on isolated evidence and Dr. Bennett's unsupported speculation, Claimant fails to explain how these findings are isolated or point to any contradictory evidence in the record supporting his position. (Id. at 14.) The Commissioner notes that Dr. Bennett's opinion was not speculative, but was based on a comprehensive evaluation of the evidence of record. (Id.)

Finally, Claimant alleges that the ALJ erred in relying on the VE testimony in response to a hypothetical question that did not include the effects of his panic attacks as documented by Mari Sullivan Walker. (Document No. 14 at 9-10.) In response, the Commissioner asserts that Claimant's argument "is a red herring and should be rejected by the Court." (Document No. 15 at 15.) The Commissioner asserts that though Dr. Bennett opined that Claimant's panic attacks could affect his job performance and attendance and acknowledged some deficits in social functioning, it does not follow that he is disabled. (Id. at 9.) Nevertheless, the Commissioner asserts that the hypothetical question to the VE included a limitation for Claimant's panic attacks and social functioning limitations. (Id.)

Analysis.

1. Opinion Evidence.

Claimant first alleges that the ALJ erred in according greater weight to the opinion of Dr. Bennett than to his treating medical providers, Dr. Muscari and Mari Sullivan Walker. (Document No. 14 at 8.) At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p,

61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2008). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2008).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do.  That is, the SSA need not accept only physicians' opinions.  In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

15

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2008). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s) made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in

16

20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2008). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants.

17

20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2008). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The ALJ considered Ms. Walker's opinions but rejected them as they were inconsistent with the evidence of record from treating medical experts. (Tr. at 21.) The ALJ also noted that the opinion

18

on disability was one reserved to the Commissioner. (Id.) Regarding Dr. Muscari's opinions, the ALJ likewise rejected his opinions because they were not supported by objective findings or progress reports of treating physicians. (Tr. at 19.)

As asserted by the Commissioner, the Court finds that any error the ALJ may have committed in rejecting Dr. Muscari's opinions is harmless. Dr. Muscari's July 3, 2006, opinion limited Claimant to performing sedentary work, an assessment consistent with the ALJ's RFC assessment, and his October 2, 2006, opinion precluded the ability to work for only a period of 60 days. Accordingly,  the Court finds that Dr. Muscari's opinions are not inconsistent with the ALJ's decision, and that remand would not lead to a different result. See Frank v. Barnhart, 326 F.3d 618, 622 (5th Cir 2003); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.") .

Regarding Mari Sullivan Walker's opinions, the Court finds that while the ALJ did not specifically identify the "evidence in file from treating medical experts" which was inconsistent with Ms. Walker's opinions, in the paragraph in which the ALJ addressed Ms. Walker's opinions, it is clear from the decision as a whole, to what evidence he referred. As summarized above, the state agency reviewing consultants, Dr. Saar and Dr. Doctor opined that Claimant's mental impairments were non-severe. Likewise, the evaluation by Mr. Adams indicated that Claimant was only moderately deficient in social functioning and mildly deficient in concentration and persistence, while Ms. Bell opined that Claimant's concentration, persistence, pace, and social functioning were normal. Dr. Hasan noted that Claimant's impairments had improved with medication. As further noted above, Dr. Bennett pointed out that contrary to Mari Sullivan Walker's opinion of mild mental

19

retardation, the other evidence of record did not support such a finding. Dr. Bennett indicated that

he had reviewed all the evidence of record in rendering his opinions. His opinions were consistent

with the other evidence of record, and therefore, the ALJ was entitled to accord them greater weight

than his treating medical sources. Furthermore, as the Commissioner notes, Ms. Walker failed to

indicate whether Claimant's impairments were expected to last for a continuous period of not less

than 12 months. See 20 C.F.R. §§ 404.1505(a), 416.905(a) (2008). Accordingly, the Court finds that

the ALJ's assessment of the opinion evidence regarding Claimant's mental impairments is supported

by substantial evidence.

2. Pain and Credibility Assessment.

Claimant next alleges that the ALJ erred in assessing Claimant's credibility regarding the

extent of the impairments on his ability to function. (Document No. 14 at 8-9.) A two-step process

is used to determine whether a claimant is disabled by pain or other symptoms. First, objective

medical evidence must show the existence of a medical impairment that reasonably could be

expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b)

(2008); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an

impairment is established, then the intensity and persistence of the pain or symptoms and the extent

to which they affect a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant

proves the existence of a medical condition that could cause the alleged pain or symptoms, "the

claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints

may not be rejected merely because the severity of pain cannot be proved by objective medical

evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain

should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v.

20

Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.   20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2008).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
> > (i) Your daily activities;
> >
> > (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> >
> > (iii) Precipitating and aggravating factors;
> >
> > (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> >
> > (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> >
> > (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> >
> > (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2008).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the

21

impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply

because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 22-23.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 24.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 22-24.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 24.)

The Court finds that the ALJ's assessment of Claimant's credibility regarding his functional limitations is supported by substantial evidence of record. Claimant alleges that Dr. Bennett's opinions constituted "unsupported speculation." However, Claimant fails to identify which specific portions of his opinions were unsupported. As noted above, Dr. Bennett's opinions were rendered after a comprehensive review of the record and were consistent with the substantial evidence of record. Dr. Bennett disagreed with Ms. Walker's assessment of mild mental retardation, and the evidence did not establish any adaptive deficits in functioning prior to the age of 22. Consequently,

Claimant could not meet the requirements of Listing 12.05C. Given that Dr. Bennett's opinions were consistent with the other substantial evidence of record, the ALJ properly considered his opinions in discrediting Claimant's testimony. Regarding the "isolated findings from various physicians taken out of context," the Court finds that Claimant fails to identify the specific findings or physicians and finds that no such statements were taken out of context. Accordingly, the Court finds that Claimant's arguments in these regards are without merit.

3. Hypothetical Question.

Finally, Claimant alleges that the ALJ erred in relying upon the opinion of the VE because the hypothetical question did not include the effects of his panic attacks as documented by Mari Sullivan Walker. (Document No. 14 at 9-10.) To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

Though Dr. Bennett opined that Claimant's panic attacks "could effect his job performance and attendance," Dr. Bennett did not conclude that Claimant was disabled based on his mental

24

impairments. Rather, Dr. Bennett's statement appeared to have meant that Claimant had some limitations in social functioning due to his panic attacks. To the extent that Claimant had such limitations, the ALJ properly noted them in her hypothetical question to the VE when she asked the VE to consider someone who would best not work with the public or work closely and cooperatively with co-workers. (Tr. at 186.) Similarly, the ALJ asked the VE to consider an individual who was limited to simple, non-complex tasks, due perhaps to borderline intellectual functioning, depression, and anxiety. (Id.) To the extent that Claimant's argument is based on Mari Sullivan Walker's opinions, as discussed above, the ALJ properly discredited her opinions as being inconsistent with the evidence of record. Accordingly, the Court finds that the ALJ properly included all limitations supported by the substantial evidence of record in her hypothetical questions to the VE, and therefore, was entitled to rely on the VE's response.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Document No. 13.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 15.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 30, 2010.

R. Clarke VanDervort
United States Magistrate Judge

25